**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TASHA ALSTON, | ) | CASE NO.  1:10-cv-0050 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | VECCHIARELLI |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff, Tasha Alston, challenges the final decision of Defendant, Michael J.

Astrue, Commissioner of Social Security (the "Commissioner"), denying Plaintiff's

applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (The "Act").  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.

For the reasons set forth below, the Commissioner's final decision should be

AFFIRMED.

1

## I.    PROCEDURAL HISTORY

On September 14, 2006, Plaintiff applied for a POD, DIB, and SSI alleging that her disability began March 1, 2003.  (Tr. 112, 117.)  These applications were denied initially (Tr. 65, 68), and upon reconsideration (Tr. 74, 81).  Plaintiff timely filed a request for a hearing before an administrative law judge ("ALJ").  (Tr. 88.)

On February 26, 2008, an ALJ held Plaintiff's hearing by video.  (Tr. 22.)  Present at the hearing with Plaintiff and the ALJ were Plaintiff's counsel and a vocational expert ("VE"), Barbara E. Burk.  (Tr. 22.)  On March 20, 2008, the ALJ found Plaintiff not disabled.  (Tr. 21.)  On November 13, 2009, the Appeals Council denied Plaintiff's request to review the ALJ's Decision.  (Tr. 1.)  On January 11, 2010, Plaintiff timely filed her civil action in this Court.  (Doc. No. 1.)

Plaintiff seeks remand, claiming (1) the ALJ failed to consider all of Plaintiff's impairments in his analysis of Plaintiff's residual functional capacity ("RFC"); (2) the ALJ failed to adequately address or discuss factors necessary to determine the credibility of Plaintiff's subjective complaints of pain and depression pursuant to S.S.R. 96-7p; (3) the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's limitations; (4) there was an insufficient showing of a significant number of jobs in the national economy that Plaintiff could perform; and (5) because of the ALJ's errors, the Decision is not supported by substantial evidence.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was a 34-year-old high school graduate at the time of her alleged onset

2

date of disability, March 1, 2003.  (Tr. 112.)  Plaintiff's past relevant work included informal waitress, cook helper, and vacuum cleaner repairer.  (Tr. 50-54.)  Plaintiff last worked as a server at a coffee shop until March 1, 2003, her alleged onset date, when the coffee shop closed.  (Tr. 132.)  In December 2007, Plaintiff told her treating psychiatrist, Dr. Wadeson, that she had begun assisting in the care of her four-year-old goddaughter.  (Tr. 369.)

### B.    Medical Evidence

#### 1.    Plaintiff's Physical Condition

Plaintiff had no documented medical treatment for any impairments for approximately three years after the alleged March 1, 2003, onset of disability.  In July 2006, Plaintiff sought emergency room treatment due to injuries she received after being hit in the head with a pistol.  (Tr. 185-98.)  CT scans of the brain and face were negative.  (Tr. 199-200.)

In August 2006, Plaintiff reported to her treating physician, Rafai Badri, M.D., pain in her neck; numbness in both her hands; and pain in her left arm.  (Tr. 335.)  An August 2006 cervical spine CT revealed degenerative joint disease; degenerative disc disease; and posterior left paramediam osteophyte formation at C5-C6 without cervical disc herniation, and without spinal or foraminal stenosis.  (Tr. 201.)

A September 2006 MRI of Plaintiff's cervical spine revealed degenerative disc disease; spondylosis at C5-C6 with a left discosteophyte complex measuring 3.5 mm; no spinal stenosis, but minimal narrowing of the left neuroforamen at that level; and possible impingement at the left C6 nerve.  (Tr. 245.)

In October 2006, Dr. Badri referred Plaintiff to Sameh R. Yonan, M.D., for pain

3

management consultation. (Tr. 323.) Dr. Yonan found that Plaintiff suffered a cervical herniated disc. (Tr. 364.) The doctor opined that Plaintiff was recovering from her injury, but advised Plaintiff to see a surgeon as soon as possible. (Tr. 364.) In the meantime, Dr. Yonan recommended physical therapy and epidural steroid injections. (Tr. 364.)

In December 2006, Franklin D. Krause, M.D., performed a physical examination at the request of the state agency. (Tr. 242.) Dr. Krause noted "break-a-way weakness and a tremor" when he tried to conduct muscle testing, but "no tremor at all when [Plaintiff] [was] thumbing through a bag looking for documents." (Tr. 243.) Dr. Krause also noted a limited range of motion in Plaintiff's neck. (Tr. 243.) Dr. Krause diagnosed a history of reported emotional problems, hypertension (well controlled and apparently uncomplicated), asthma with normal expiratory flow rate, neck injury, possible pain behaviors, and uncomplicated diabetes. (Tr. 244.) Dr. Krause offered no specific recommendations. (Tr. 244.)

Also in December 2006, consultative examiner Paul Morton, M.D., found Plaintiff's degenerative disc disease and other impairments "well controlled and uncomplicated." (Tr. 251.) Dr. Morton opined that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, and sit, stand, and walk six hours each in an eight-hour day. (Tr. 251.) Plaintiff could never climb ladders, ropes, or scaffolds or reach overhead, and needed to avoid concentrated exposure to fumes because of a history of asthma. (Tr. 252-54.) Dr. Morton noted that testing showed reduced strength and range of motion. (Tr. 251.) Dr. Morton considered Plaintiff's alleged limitation to lifting only 5 pounds, but found no objective evidence supporting such a limitation. (Tr.

4

255.)

From January 2007 through at least November 2007, Plaintiff received physical therapy treatment and several epidural steroid injections under the care of physicians at the MetroHealth Medical Center.  (Tr. 287-306, 371-471.)  On January 15, 2007, Plaintiff reported the pain in her neck at 8 out of 10, with 10 being the greatest level of pain on the scale.  (Tr. 304.)  On January 29, 2007, Plaintiff reported the pain in her neck at 9 out of 10.  (Tr. 293.)  On February 28, 2007, Dr. Malkamaki diagnosed Plaintiff with a cervical herniated disc.  (Tr. 292.)

In March 2007, Drs. Malkamaki and Tran observed mildly decreased cervical range of motion, but Plaintiff's strength was full and her neurological exam was considered "normal."  (Tr. 432-33.)  Also in March 2007, Dr. Badri saw Plaintiff for the first time since October 2006.  (Tr. 321-22.)  Citing the cervical CT and MRI, Dr. Badri opined that Plaintiff could stand/walk only 2 hours total per day, lift only up to five pounds, and had extreme limitations in pushing, pulling, reaching, and handling.  (Tr. 341.)  Dr. Badri noted that Plaintiff was taking several medications, including the following:  ASA, Ambien, Amitriptyline,  Celebrex, Corgen, Benicar, Imitrex, Prozac, Singulair, Seroquel, and Ultram.  (Tr. 315.)

In April 2007, Plaintiff again saw Drs. Malkamaki and Tran.  (Tr. 409-13.)  Plaintiff reported that physical therapy treatment and medication were helping her pain and mental condition.  (Tr. 413.)  Dr. Tran recorded that range of motion was still "mildly decreased."  (Tr. 412.)  Dr. Malkamaki noted, however, that Plaintiff had a "much better ease of movement and better [range of motion] than before," and that the neurological examination revealed normal strength in both her upper and lower extremities.  (Tr.

5

413.)

In October 2007, an electromyography (EMG) performed by Dr. Shu Que Huang was consistent with a mild demyelinating bilateral median motor mononeuropathy at her wrist (carpal tunnel syndrome); but there were no findings supporting acute or chronic radiculopathy.  (Tr. 378-79.)

In November 2007, Drs. Harris and Tran found that Plaintiff had a full range of cervical motion, but with increased pain at the end of the range; that Plaintiff's left wrist tested negative on both Tinel's and Phalen's tests; and that Plaintiff had full strength and intact sensation.  (Tr. 374-75.)  They diagnosed Plaintiff with "mild" carpal tunnel syndrome.  (Tr. 375.)  At that time, Plaintiff reported the pain in her neck at 9 out of 10.  (Tr. 372.)

### 2.    Plaintiff's Mental Condition

On October 17, 2006, Plaintiff was examined by consultative psychiatrist, Sally Felker, Ph.D.  (Tr. 214.)  Dr. Felker diagnosed depression of an unspecified type, borderline intellectual functioning, and developmental learning disorder.  (Tr. 218.)  Dr. Felker found evidence of mild to moderate impairment in Plaintiff's ability to concentrate and attend to tasks and moderate restrictions in her ability to relate to others and deal with the general public. (Tr. 218.)  Dr. Felker also found Plaintiff's ability to relate to work peers and supervisors, and to tolerate stressors of employment, moderately impaired.  (Tr. 218.)

Dr. Felker assigned a GAF score of 53,[1] opining that Plaintiff had moderate

---

[1] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in

difficulties in her occupational functioning.  (Tr. 218.)  Dr. Felker reported that Plaintiff appeared quite depressed; was intellectually limited; had a narrow range of activities and interest; and had a diminished ability to deal with stress.  (Tr. 218.)

On October 25, 2006, state reviewing psychiatrist Robelyn Marlow, Ph.D., reported that Plaintiff had mild limitations in activities of daily living and maintaining social functioning but moderate difficulties in maintaining concentration, persistence, and pace.  (Tr. 234.)  Dr. Marlow also found that, although Plaintiff could understand and follow simple instructions, Plaintiff's concentration and persistence could be variable due to her preoccupation with somatic symptoms.  (Tr. 240.)

On January 25, 2007, Plaintiff began seeing psychiatrist Kelly Wadeson, Ph.D. for treatment.  (Tr. 299.)  Dr. Wadeson reported that Plaintiff feared going out at night, that she was constantly scanning her surroundings for individuals that could harm her, had a fear of closing her eyes, was avoiding certain relatives, and was engaging in very few activities.  (Tr. 299.)  Plaintiff described a long history of depression that involved patterns of being depressed for several days and then having several days of an improved mood.  (Tr. 299.)  Plaintiff's symptoms included feeling sad, being tearful, decreased sleep, recurrent suicidal thoughts, disrupted appetite, weight gain and no interest in activities.  (Tr. 299.)

Throughout 2007, Plaintiff continued to see Dr. Wadeson, was often tearful, and reported continuing bouts of sadness, depression, and thoughts of suicide.  (Tr. 402-

this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

407, 388, 377, 370, 369.)  Dr. Wadeson diagnosed Plaintiff with a Major Depressive Disorder and Post Traumatic Stress Disorder.  (Tr. 370.)  Dr. Wadeson  recommended psychotherapy.  (Tr. 402.)  Dr. Wadeson noted that Plaintiff had prescriptions for several medications, including the following:  Aspirin, Avandamet, Benicar, Byetta, Cymbalta, Flonase, Toprol, Tretinoin, Ultram, and Zanaflex.  (Tr. 369.)

### C.  Hearing Testimony

#### 1.  Plaintiff's Testimony

Plaintiff testified to the following.  Plaintiff lived with only her mother, who was disabled with a collapsed lung.  (Tr. 28.)  Plaintiff could not do any housework; therefore, her mother did it all.  (Tr. 30.)  Plaintiff could not carry more than five pounds; could not walk more than 10 paces before stopping; could not stand for more than five seconds until she needed to sit down; and could not sit more than two seconds without needing to stand.  (Tr. 45-46.)  Plaintiff suffered pain in her left hand, neck, spine, and generally along the left side of her body.  (Tr. 30-31.)  Plaintiff could not hold items with her left hand.  (Tr. 46-47.)

#### 2.  Vocational Expert Testimony

The ALJ asked the VE to consider someone with Plaintiff's background who was capable of performing a range of light work.  (Tr. 54.)  The VE testified that such a person could not perform such a hypothetical person's past work, but could work as a janitor (238,000 jobs nationally) and car wash attendant (75,000 jobs nationally).  (Tr. 54-55.)  The VE further testified that, if such a hypothetical person were further limited to sedentary work and only occasional use of the non-dominant hand, then all of the limitations would preclude work.  (Tr. 59.)

8

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).   A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her

9

past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2.  The claimant has not engaged in substantial gainful activity since March 1, 2003, the alleged onset date.

3.  The claimant has the following severe impairments: depression; post traumatic stress disorder; boarderline intellectual functioning, degenerative disc disease, and obesity.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

5.  The claimant has the residual functional capacity to perform work that does not require: exertion above the light level . . . ; or any climbing or crawling; or more than simple, routine, repetitious tasks; or assembly-line pace; or more than occasional contact with coworkers or supervisors; or any contact with the public.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on December 14, 1968 and was 34 years old, which is defined as a younger individual, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2003 through the date of this decision.

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole. *Heston v. Comm'r of Social Security*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, nor weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681.  A decision supported by

11

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

> **B.** **The ALJ's RFC Assessment of Plaintiff's Cervical Herniated Disc and Carpal Tunnel Syndrome.**

Plaintiff argues that the ALJ erroneously failed to consider the impact of Plaintiff's cervical herniated disc and carpal tunnel syndrome in his RFC assessment.  (Pl.'s Br. 14-15.)  This Court disagrees.  As discussed below, although the ALJ did not recognize the herniated disc diagnosis, he considered the extent to which Plaintiff's disc and wrist problems limited her functional capacity.

The ALJ noted that, in August 2006, a CT scan of Plaintiff's neck did not indicate that she suffered a cervical herniated disk.  (Tr. 17, *citing* Ex. 2F/1, 11F/2.)  However, the ALJ failed to notice that Drs. Malkamaki and Yonan diagnosed Plaintiff with a cervical herniated disc.  (Tr. 292, 364.)  The ALJ's failure to recognize the *diagnosis* of the herniated disc, however, does not constitute error.  The issue is not the diagnosis, but rather, the impact of the condition on the claimant's ability to work.  *See, e.g.*, *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder.").

Despite not recognizing Plaintiff's diagnosis of a cervical herniated disc, the ALJ still recognized Plaintiff's neck pain and considered the extent to which it limited her. The ALJ noted that, on April 30, 2007, Plaintiff's neck pain was improving:  Plaintiff reported to Dr. Malkamaki that physical therapy and epidural steroid injections were

helping with her neck pain, and Dr. Malkamaki reported that Plaintiff's ease of movement and range of motion improved.  (Tr. 18, *citing* Ex. 23F/46.)  The ALJ concluded that the therapy and injection treatments were "[a]t least moderately successful in resolving her pain."  (Tr. 20.)

Moreover, the ALJ directly considered Plaintiff's carpal tunnel syndrome.  The ALJ noted that Plaintiff's "left wrist tested negative on both Tinel's and Phalen's."  (Tr. 18, *citing* Ex. 23F/8.)  The exhibit to which the ALJ cited was the report by Drs. Harris and Tran, who diagnosed Plaintiff with mild carpal tunnel syndrome.  (Tr. 375.)  Tinel's and Phalen's are two tests used for diagnosing carpal tunnel syndrome.  *See* The Merck Manual of Diagnosis and Therapy 492 (Mark H. Beers & Robert Berkow eds., 7th ed. 1999).

Because the ALJ addressed Plaintiff's cervical herniated disc and carpal tunnel syndrome, and their impact on Plaintiff's overall ability to work, this assignment of error lacks merit.

### C.    The ALJ's Analysis of Plaintiff's Credibility Pursuant to Social Security Ruling 96-7p.

Plaintiff argues that the ALJ's credibility assessment of Plaintiff's subjective statements of symptoms and their effects on her was deficient because the ALJ (1) failed to adequately address Plaintiff's daily activities; (2) failed to discuss factors that precipitated and aggravated Plaintiff's pain; (3) refused to address Plaintiff's medications; and (4) failed to consider the consistency of Plaintiff's statements internally and with the record as a whole.  (Pl.'s Br. 12-15.)

When an ALJ assesses the credibility of a claimant's subjective statements of

13

symptoms, and their effects on the claimant, he must consider the following factors:

> (i)     [D]aily activities;
> (ii)    The location, duration, frequency, and intensity of . . . pain;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
> (v)     Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)    Any measures you use or have used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at 3.  Moreover,

the consistency of the evidence, including a claimant's subjective statements, is relevant

in determining a claimant's credibility.  20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at 5.  As

discussed below, the ALJ properly considered these factors.

> **1.     Plaintiff's Ability to Perform Daily Activities.**

Plaintiff claims that the ALJ's analysis of Plaintiff's daily activities was inadequate

because it addressed only one fact in the record.  (Pl.'s Br. 14.)  The ALJ explained that

Plaintiff's activities of daily living were not consistent with her allegations of debilitating

pain and mental condition because, although the claimant testified that she depended on

her mother to perform household chores, Plaintiff also testified that her mother is

disabled by a collapsed lung, which cast doubt on the mother's ability to assist Plaintiff.

(Tr. 19.)  Plaintiff claims that "no other analysis was entertained" by the ALJ.  (Pl.'s Br.

14.)  However, the ALJ's also noted that, in December 2007, Plaintiff told Dr. Wadeson

that she had begun assisting in the care of Plaintiff's four-year-old goddaughter.  (Tr.

19.)  The ALJ could reasonably conclude that Plaintiff's ability to care for a four-year-old

was inconsistent with her allegations of debilitating pain and mental impairments.

The ALJ noted many other relevant facts that cast doubt on Plaintiff's testimony,

including the following.   Plaintiff stopped working at the time of her alleged onset date of

14

disability because her place of employment closed, not because of any impairments. (Tr. 17.)  Although Plaintiff alleged a disability onset date of March 1, 2003, the earliest treatment note in the record is dated July 5, 2006, which was more than three years after the alleged onset date.  (Tr. 17.)  In July 2006, Plaintiff sought emergency room treatment because of injuries she received when she was assaulted, not because of any disabling impairments suffered since her onset date.  (Tr. 17.)  Plaintiff was prescribed only Tylenol for her pain at that time.  (Tr. 17.)  Finally, the objective medical evidence weighed against Plaintiff's subjective statements.  (Tr. 18-20.)

Because the ALJ adequately addressed Plaintiff's ability to perform daily activities and gave specific reasons for discrediting Plaintiff's statements of an inability to perform them, this assignment of error lacks merit.

## 2.  Precipitating and Aggravating Factors Affecting Plaintiff's Pain.

Plaintiff makes the bald, unsupported assertion that "The ALJ fails to discuss the precipitating or aggravating factors of Plaintiff's pain."  (Pl.'s Br. 14.)  This is both incorrect and not a basis of error.  Social Security Ruling 96-7p requires the ALJ to "consider" all relevant evidence, not "discuss" it.  S.S.R. 96-7p(4), at 1.  Moreover, an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).  An ALJ need not make explicit credibility findings as to each bit of conflicting testimony so long as his factual findings as a whole show that he implicitly resolved such conflicts.  *Id.*

Here, the ALJ not only considered precipitating and aggravating factors affecting

Plaintiff's symptoms, but he also discussed them.  The ALJ found that Plaintiff's

"degenerative back condition reasonably may be expected to cause pain."  (Tr. 18.)

Moreover, the ALJ recognized Plaintiff's claims that walking and standing caused her

pain.  (Tr. 19.)  However, the ALJ found that an RFC limitation to light work, with no

climbing or crawling, would accommodate such pain based on state agency reviewing

physician Dr. Morton's opinion because the doctor's opinion was more consistent with

the objective medical evidence.  (Tr. 19, *citing* Ex. 12F.)  Because the ALJ considered

and discussed factors that precipitated and aggravated Plaintiff's pain, this assignment

of error lacks merit.

### 3.   Plaintiff's Medication.

Plaintiff claims "the ALJ refused to consider Plaintiff's medications."  (Pl.'s Br. 14.)

This is incorrect.  The ALJ provided the following analysis regarding Plaintiff's

medications:

> The claimant testified to taking over 20 prescribed medications,
> with paranoia, increased depression, crying, and reduced
> memory as side effects.  I am unable to locate all of these
> medications in her treatment records, and the record does not
> document side effects that would prevent performance of the
> simple, low-stress tasks specified in the RFC adopted here.

(Tr. 19.)  Although Plaintiff alleged that her medication caused her paranoia, the ALJ

specifically noted that paranoia was not documented in the medical records.  (Tr. 19.)

And, although Plaintiff alleged that her medications caused her various other debilitating

mental conditions, the ALJ noted that treating psychiatrist Dr. Wadeson assessed

Plaintiff's global functioning at 51-60, which represented only moderate symptoms of

mental impairments.  (Tr. 19.)  The ALJ concluded that such mental conditions were not

16

severe enough to preclude Plaintiff from performing sustained work that conformed to Plaintiff's RFC.  (Tr. 19.)  Because the ALJ considered Plaintiff's medications, this assignment of error lacks merit.

### 4.      The Consistency of Plaintiff's Statements.

Plaintiff argues that the ALJ's credibility assessment of Plaintiff's subjective statements of pain and depression was deficient because the ALJ failed to "properly analyze Plaintiff's consistency in her statements."  (Pl.'s Br. 15.)  Plaintiff explains that, because her statements were consistent both internally and with the record as a whole, they were "entirely credible and should have been given more weight."  (Pl.'s Br. 15.) However, Plaintiff's statements were not consistent.  For example, the ALJ found the facts that Plaintiff's mother was disabled by a collapsed lung, and that Plaintiff had reported taking care of her four-year-old goddaughter, inconsistent with Plaintiff's statements of an inability to perform household activities.  (Tr. 19.)  And the ALJ found the objective medical evidence inconsistent with Plaintiff's alleged medication-induced paranoia.  (Tr. 19.)

Moreover, although the consistency of a claimant's statements is a strong indication of the claimant's credibility, S.S.R. 96-7p, at 5,  it is not dispositive of credibility:  "the adjudicator must carefully consider the individual's statements about symptoms *with the rest of the relevant evidence in the case record* in reaching a conclusion about the credibility of the individual's statements," *id.* at 1 (emphasis added). Here, the ALJ considered a great deal of relevant evidence from the record that cast doubt on Plaintiff's subjective statements of pain and depression.  (Tr. 18-20.)  Because Plaintiff's statements were not consistent, and because the ALJ considered an

abundance of evidence from the record that weighed against Plaintiff's statements, this assignment of error lacks merit.

**D.     The ALJ's Hypothetical Question to the VE.**

A VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments.  *Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)*.  Plaintiff argues that the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's impairments because the ALJ based the question on an improper RFC determination that Plaintiff could perform light work.  (Pl.'s Br. 15-16.)  Plaintiff contends that her cervical herniated disc and carpal tunnel syndrome limited her to no more than sedentary work.  (Pl.'s Br. 16-17.)  This argument really challenges the adequacy of the ALJ's RFC assessment, not the hypothetical question.  The ALJ's RFC assessment, however, was adequate.

The ALJ based his RFC assessment on the following facts.  Plaintiff reported to Dr. Malkamaki at MetroHealth that physical therapy and epidural steroid injections were helping with her neck pain.  (Tr. 18.)  Dr. Malkamaki reported that Plaintiff's ease of movement and range of motion improved, and that Plaintiff's neurological examination revealed normal strength in both her upper and lower extremities.  (Tr. 18.)  Dr. Harris reported that Plaintiff's "left wrist tested negative on both Tinel's and Phalen's," and that Plaintiff had normal strength in her upper and lower extremities.  (Tr. 18.)  The ALJ concluded that the therapy and injection treatments were "[a]t least moderately successful in resolving her pain" (Tr. 20), and that "the objective medical evidence [did] not document a condition that would prevent the lifting and carrying associated with light exertion" (Tr. 18).

18

Plaintiff offers the opinions of Doctors Badri, Yonan, and Krause as evidence of Plaintiff's limitation to only sedentary work.  (Pl.'s Br. at 16.)  Dr. Badri opined that Plaintiff was able to walk/stand for only two hours total in an eight hour day; could not lift more than five pounds; and suffered extremely limited pushing/pulling, reaching, and handling.  (Tr. 341.)  Dr. Yonan found decreased movement and range of motion in Plaintiff's upper-left extremities; decreased strength in the left wrist, elbow, and shoulder; and "decreased sensation over the left L5-L6, and L6-L7 distributions, minimally, compared to the right side."  (Tr. 364.)  And Dr. Krause found loss of appreciation of pin-prick in the entire left arm.  (Tr. 244.)  The ALJ did not give great weight to these opinions, however, because he found them lacking credibility in light of the record as a whole.

The ALJ did not directly discredit Dr. Krause's opinion in his Decision, but this was not error in light of the ALJ's entire Decision and all of the evidence.  *See Kornecky, 167 F. App'x at 508* ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

The ALJ gave little weight to Dr. Yonan's opinions because Dr. Yonan's records did not indicate that Plaintiff was treated other than conservatively; because Dr. Yonan recommended not only surgery for Plaintiff's neck pain, but also, in the alternative, physical therapy and epidural steroid injections; and because, after receiving physical therapy and epidural steroid injections, Plaintiff reported that the treatments were helping.  (Tr. 18.)

Dr. Badri is a treating physician.  (Tr. 19.)  The opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner.

19

See *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983).

However, an ALJ is not bound by conclusory statements of a treating physician that a

claimant is disabled, and may reject determinations of such a physician when good

reasons are identified for not accepting them.  *Hall v. Bowen*, 837 F.2d 272, 276 (6th

Cir. 1988) (citations omitted), *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Good reasons for rejecting a treating physician's opinion include when the opinion is not

supported by sufficient clinical findings, when it is inconsistent with the other record

evidence, and when it is inconsistent with the treating physician's other findings.  *Bogle

v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  Indeed, when a treating physician's

opinion is not supported by detailed, corroborating medical evidence, a court may defer

to the ALJ's assessment of a claimant's disability.  *Blacha v. Sec'y of Health & Human

Servs.*, 927 F.2d 228, 230 (6th Cir. 1990).

       Here, the ALJ explained that Dr. Badri's opinion was not controlling because Dr.

Badri did not explain the bases of his conclusions, and because Dr. Badri's evaluation

was inconsistent internally and with the record as a whole.  (Tr. 19.)  For example, the

ALJ noted that Dr. Badri did not explain the basis of his conclusion that Plaintiff was

extremely limited in three exertional categories.  (Tr. 19.)  The ALJ noted that Dr. Badri's

findings were internally inconsistent because Dr. Badri indicated that Plaintiff was no

more than moderately limited in her mental functional capacity, and was mostly non-

significantly limited in other categories, at the same time that he concluded she was

unemployable.  (Tr. 19.)  And the ALJ noted that Dr. Badri's opinion was inconsistent

with the rest of the record evidence because Dr. Badri performed his evaluation at the

same time Plaintiff was undergoing physical therapy and injection treatments, which

appeared at least moderately successful in resolving Plaintiff's pain.  (Tr. 19.)

In contrast to Dr. Krause's, Yonan's, and Badri's opinions, the ALJ gave more weight to Dr. Morton's opinion that Plaintiff was able to perform light work because it was consistent with the objective medical evidence.  (Tr. 19.)

The ALJ reasonably found Plaintiff's longitudinal treatment record of improvement, corroborated by the state agency's findings, persuasive, and thus found that no additional limitations needed to be placed in Plaintiff's RFC.  (Tr. 16, 18-19.)  The record shows that substantial evidence supports the ALJ's RFC determination.  The ALJ's hypothetical question was based on his RFC determination.  Therefore, the hypothetical question adequately portrayed Plaintiff's impairments.  As such, this assignment of error lacks merit.

**E.     The Commissioner's Burden of Proving a Significant Number of Jobs in the National Economy.**

The VE testified that 238,000 janitor/cleaner jobs and 75,000 automatic car wash attendant jobs existed in the national economy that Plaintiff could perform.  (Tr. 55-56.)  Plaintiff argues that this was an insufficient showing of a significant number of jobs in the national economy because (1) the total of 313,000 jobs in the national economy does not constitute a significant number of jobs; (2) the VE's testimony of only two types of jobs provides an insufficient number of *types* of jobs in the national economy; and (3) the VE did not testify to any numbers of jobs in the regional or local economies.  (Pl.'s Br. at 16, 17.)  Plaintiff provides no legal basis for these arguments, however, but only asks the Court to "question whether of [sic] 313,000 jobs across the country constitutes a significant number of jobs."  (Pl.'s Br. at 18.)

Defendant responds that these arguments should be waived because Plaintiff failed to adequately develop them.  (Def.'s Br. 11, *citing McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).)  Indeed, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995.  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* at 995-96.  Here, Plaintiff offers her arguments in a perfunctory manner by citing no legal authority in support and by asking this court only to "question" whether the VE's testimony was adequate.  Therefore, this assignment of error lacks merit.

**F.      Substantial Evidence.**

Plaintiff claims that her assignments of error lead to the conclusion that the ALJ's Decision is not supported by substantial evidence.  (Pl.'s Br. 18.)  Plaintiff's assignments of error, however, lack merit.  Moreover, the ALJ's Decision is based on an proper RFC assessment and testimony from a VE that accurately portrays Plaintiff's limitations.  Therefore, the ALJ's Decision is supported by substantial evidence.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED, and that judgment be entered in favor of

the Commissioner.


                                        s/ *Nancy A. Vecchiarelli*
                                        U.S. Magistrate Judge


Date: October 6, 2010



**OBJECTIONS**
**        Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**